UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

Filed & Entered
On Docket
November 18, 2013

_____

In re:
    Todd M. Enright,                                         Chapter 7
              Debtor.                            Case # 10-10873
_____

**National Physicians Holdings Company,**
**Physicians Re Captive Insurance Company,**
**Joliet Area Risk Retention Group,**
**Tift Area Captive Insurance Company,**
**TPA Captive Insurance Company,**
              Plaintiffs,                      Adversary Proceeding
    vs.                                              # 10-1041
**Todd M. Enright,**
              Defendant.
_____

| Appearances: | Gary Karnedy, Esq. | Todd M. Enright |
|---|---|---|
| | Primmer Piper Eggleston & Cramer | Brattleboro, VT |
| | Burlington, VT | Pro se *Defendant* |
| | For Plaintiffs | |

**MEMORANDUM OF DECISION**
**GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

      National Physicians Holdings Company, Physicians Re Captive Insurance Company, Joliet Area Risk Retention Group, Tift Area Captive Insurance Company, and TPA Captive Insurance Company (collectively, the "Plaintiffs") commenced this adversary proceeding to challenge the Debtor's right to a discharge in general, and alternatively, to a discharge of the debts he owes to them. The Plaintiffs subsequently moved for summary judgment, alleging that there existed no genuine issues of material fact and they were entitled to judgment as a matter of law. For the reasons set forth below, the Court grants the Plaintiffs' motion for summary judgment.

1

## JURISDICTION

This Court has jurisdiction over these contested matters pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference signed by Chief Judge Christina Reiss, issued June 28, 2012. Further, the Court declares this to be a "core proceeding" under 28 U.S.C. § 157(b)(2)(I) and (J), on which it has authority to enter final judgment.

## PROCEDURAL HISTORY

The Debtor initiated a Chapter 11 case on June 24, 2010, which subsequently converted to Chapter 7 on December 9, 2010. On September 17, 2010, the Plaintiffs filed the instant adversary proceeding, seeking an order declaring the debts the Debtor owed to them to be non-dischargeable and denying the Debtor a discharge (doc. # 1)[1] (the "Complaint"). After the Debtor filed an answer, the Plaintiffs moved for and obtained leave to file an amended complaint, which was filed on March 9, 2011 (doc. # 13) (the "Amended Complaint"). Following entry of several amended scheduling orders, the Plaintiffs moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056 (doc. # 40) (the "Motion"). In support of the Motion, the Plaintiffs filed a memorandum of law alleging that the record indisputably showed they were entitled to judgment as a matter of law on both their denial of discharge and exception to discharge causes of action set out in the Amended Complaint (doc. # 41) (the "Memo"). The Plaintiffs also filed a lengthy statement of undisputed material facts which they asserted showed they were entitled to summary judgment (doc. # 42) (the "SUMF").

On August 1, 2013, the Debtor filed his second motion to extend the time to respond to the Motion (doc. # 47), and an initial response consisting solely of paragraph for paragraph answers to the Plaintiffs' SUMF, many of which simply state that he disputes the allegations and will supplement his answer in a later filing (doc. # 48) (the "Initial Response"). The Court granted the request for an extension of time to respond, and the Debtor thereafter filed a supplemental objection to the Plaintiffs' Motion (doc. # 52) (the "Supplemental Objection"), which again merely responds to each paragraph of the Plaintiffs' SUMF.

The Plaintiffs replied that the Court should grant their Motion because: (1) the Debtor had failed to support his position with a memoranda of law, as required by Local Rule 7056-2(a); (2) the Debtor generally failed to support his objections with citations to the record; and (3) the Debtor failed to place any material fact in dispute (doc. # 54) (the "Reply"). After holding oral argument on August 20, 2013, the Court considered the matter fully submitted and took it under advisement.

---

[1] All citations to the docket refer to docket entries in AP # 10-1041, unless otherwise noted.

2

PERTINENT FACTS

The Court finds the following facts to be both undisputed and material:

1. Plaintiffs Joliet Area Risk Retention Group Captive Insurance Company ("Joliet"), Tift Area Captive Insurance Company ("Tift"), and TPA Captive Insurance Company ("TPA") are Georgia corporations and captive insurance companies that are reinsured through Plaintiff Physicians Re Captive Insurance Company ("Physicians Re"). Affidavit of Carol W. Dixon dated May 31, 2013 (doc. # 40-1) ("Dixon Aff."), ¶ 2; SUMF, ¶ 1.

2. Physician Captives, LLC ("Physician Captives") was a Georgia limited liability company that maintained its principal place of business in Thomasville, Georgia. Physician Captives contracted with Joliet, Tift, and TPA, in addition to other captive insurance companies, to provide captive management services, medical director services, and risk management services for those companies. It also provided similar services to Physicians Re and National Physicians Holding Company ("NPHC"). Dixon Aff., ¶ 5; SUMF, ¶ 4.

3. In early 2008, Physician Captives assigned a portion of its duties under the management contracts to Captive Services, Inc. ("Captive Services"), a Georgia corporation. Dixon Aff., ¶¶ 6-7; SUMF, ¶ 6.

4. Carol Dixon ("Dixon") was the President of Captive Services from January 1, 2008 to July 11, 2008. Prior to January 1, 2008, Dixon was an employee of Physician Captives, LLC. Dixon Aff., ¶ 1; SUMF, ¶ 7.

5. The Debtor was a managing member and agent for Middlebury Equity Partners, LLC ("Middlebury"). Dixon Aff., ¶ 4; SUMF, ¶ 3.

6. In February 2008, Middlebury entered into loan participation agreements with Physicians Re, Joliet, TPA, and Tift ("Master Participation Agreements," hereinafter "MPA"). Pursuant to the MPAs, Physicians Re, Joliet, Tift, and TPA were to purchase interests in loans held by Middlebury. Dixon Aff., ¶ 10; SUMF, ¶ 10.

7. In 2008, the Debtor represented to Dixon that Middlebury had an outstanding loan to Gail Koff, P.C. and Gail J. Koff ("Koff Loan"), which he said would be a good investment for the Plaintiffs. Dixon Aff., ¶ 13; SUMF, ¶ 13.

8. The Debtor represented that the Koff Loan was secured by, among other things, mortgage deeds on real property in Cold Spring, New York and Pawlet, Vermont, and that the deeds prohibited Koff from placing any additional mortgages, liens, encumbrances or indebtedness on the property without Middlebury's prior written consent. Dixon Aff., ¶¶ 16-17; SUMF, ¶¶ 16-17.

3

9. Based on these representations, Plaintiffs Joliet and TPA entered into MPAs, purchasing a percentage of Middlebury's interest in the Koff Loan. Dixon Aff., ¶ 18; SUMF, ¶ 18.

10. Dixon, Joliet and TPA later learned that contrary to the Debtor's representations, the real property securing the Koff Loan had been "released" prior to the execution of the MPAs and Koff did not own the Pawlet property at the time of Joliet's and TPA's investments. Dixon Aff., ¶¶ 22-23; SUMF, ¶¶ 22-23.

11. The Debtor represented that another loan, the Hollis Loan, possessed "little risk given the overall collateral value," and that the loan was secured by real property in York, Maine. Dixon Aff., ¶¶ 28, 32; SUMF, ¶¶ 28, 32.

12. Based on the Debtor's representations, Dixon caused Joliet and Tift to enter into MPAs whereby they purchased a portion of Middlebury's interest in the Hollis loan. Dixon Aff., ¶ 33; SUMF, ¶ 33.

13. Dixon, Tift and Joliet later learned that the real property securing the Hollis Loan had been released prior to the execution of the MPAs, and at the time that Middlebury sold the loan participations to Joliet and Tift, there was no collateral for the Hollis Loan. Dixon Aff., ¶¶ 37-38; SUMF, ¶¶ 37-38.

14. In early 2008, the Debtor represented to Dixon that Middlebury had outstanding loans to Gerard M. and Kathleen D. Costello, secured by three parcels of real property in West Dover and Wilmington, Vermont ("Costello Loan"). Dixon Aff., ¶¶ 43-44; SUMF, ¶¶ 43-44.

15. Based on the Debtor's representations that Middlebury still maintained its full interest in the Costello Loan and that the loan was secured as represented, Dixon executed an MPA on behalf of Physicians Re, purchasing a percentage of Middlebury's interest in the Costello Loan. Dixon Aff., ¶ 45; SUMF, ¶ 45.

16. In fact, the Costellos no longer owned any of the parcels at the time of Physicians Re's investment. Dixon Aff., ¶¶ 48-49; SUMF, ¶¶ 48-49.

17. Similar circumstances to those described *supra* also existed with respect to a fourth loan, the Tipperary loan. See Dixon Aff., ¶¶ 51-59; SUMF, ¶¶ 51-59.

18. On August 13, 2010, the Court entered an Order granting the Debtor's spouse relief from the automatic stay to proceed with her pending divorce proceeding against the Debtor in the Georgia Superior Court, Thomas County, Civil Action No. 2008-cv-1501 (the "Divorce Action"). Doc. # 67 (ch 7 case # 10-10873); SUMF, ¶ 88.

19. On August 24, 2010, this Court ordered the Debtor to, among other things, "produce documents in GA & act as a fiduciary and proceed in good faith. Failure to comply with orders going forward is subject to contempt." See August 24, 2010 docket entry (ch 7 case # 10-10873); SUMF, ¶ 89.

4

20. By Order dated October 4, 2010, this Court directed the Office of the United States Trustee to appoint an examiner in the Chapter 11 case (the "Examiner"), to investigate (1) whether there were irregularities in the management of the Debtor's finances and operations, (2) whether the Debtor concealed assets or failed to list assets on his bankruptcy schedules, (3) whether there were grounds to pursue fraudulent transfer actions against the Debtor, and (4) whether there were grounds to deny the Debtor's discharge, among other things. Doc. # 185 (ch 7 case # 10-10873); SUMF, ¶ 92.

21. On November 29, 2010, the Examiner filed his first interim report (the "Report"). Doc. # 239 (ch 7 case # 10-10873); SUMF, ¶ 94.

22. In investigating the Divorce Action, the Examiner pointed out that the Debtor was "'less than candid with the Auditor and the CPA in his statements and his actions' and, as a result, the auditor was simply unable to provide a coherent analysis of [the Debtor's] finances, assets, expenses and income." Doc. # 239 at 11 (ch 7 case # 10-10873); SUMF, ¶ 95.

23. The Examiner noted that the Divorce Action auditor could not "understand how [the Debtor's] net worth decreased so much in such a short period of time, other than through a plan of asset protection." Doc. # 239 at 12 (ch 7 case # 10-10873); SUMF, ¶ 96.

24. As for record keeping, the Examiner determined that the Debtor was "unable or unwilling to maintain appropriate business records which would allow a proper forensic accounting of his past business activities," and "it appears that there was and is little regard for corporate form insofar as income and expenses are concerned with expenses being paid by the entity that happened to have money at the time or money being transferred between entities to meet expenses." Doc. # 239 at 14 (ch 7 case # 10-10873); SUMF, ¶ 98.

25. At the time of the Report, the Examiner was still investigating whether the Debtor was concealing assets or failed to list assets in his bankruptcy schedules, whether there were grounds to pursue preference or fraudulent transfer actions, and whether there were grounds to deny discharge, among other things. Doc. # 239 at 16 (ch 7 case # 10-10873); SUMF, ¶ 100.

26. On December 9, 2010, soon after the Examiner filed the Report, the Debtor filed a motion to convert his Chapter 11 case to a Chapter 7 case, which the Court granted on the same date. Therefore, the Examiner ceased his investigation. Doc. # 248, 249 (ch 7 case # 10-10873); SUMF, ¶ 101.

27. The § 341 meeting has been indefinitely adjourned in the Chapter 7 case, because the Debtor informed the Trustee he would invoke his Fifth Amendment right if called to testify. SUMF ¶ 104; Supplemental Objection ¶ 104.[2]

---

[2] See Vt. LBR 7056-1(a)(3) (providing that "[t]he respondent is deemed to have admitted all facts in the movant's statement of

5

DISCUSSION

*General Legal Standards*

Summary judgment is proper if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56; Fed.R.Bankr.P. 7056; Vermont Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). The moving party bears the burden of showing that no genuine issue of material fact exists. Vermont Teddy Bear Co., 373 F.3d at 244. A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The substantive law identifies those facts that are material; only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Id. Factual disputes that are irrelevant or unnecessary are not material. Id. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. See Vermont Teddy Bear Co., 373 F.3d at 244. However, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment. Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

The burden of proof in a non-dischargeability proceeding is on the creditor seeking an exception to discharge to prove, by a preponderance of the evidence, that its claim satisfies the requirements of one of the discharge exceptions enumerated in Bankruptcy Code § 523(a). Grogan v. Garner, 498 U.S. 279, 286 (1991). Further, "exceptions to dischargeability are narrowly construed, an approach that implements the fresh start policy of the Bankruptcy Code." In re Bonnanzio, 91 F.3d 296, 300 (2d Cir.1996) (citations and quotations omitted). At the same time, however, a discharge is not available to a dishonest debtor or a debtor who fails to comply with his obligations under the Code. In re Maynard, 269 B.R. 535, 539 (D. Vt. 2001); In re Nemes, 323 B.R. 316, 324 (Bankr. E.D.N.Y. 2005).

*Introduction*

The Plaintiffs' observation that the Debtor's two responses to the Motion fail to comply with Vermont Local Bankruptcy Rule 7056-2(a), which requires that objections to motions for summary judgment be accompanied by memoranda of law, is accurate, and compliance with the Local Rules is important. However, given the Debtor's *pro se* – albeit relatively sophisticated – status, the Court declines to grant the Plaintiffs' request for the Court to discredit the Debtor's position based solely upon his failure to provide a memorandum of law with his objection to the Motion.

---

material undisputed facts except to the extent that party controverts them in a statement of disputed material facts."

6

Instead, the Court elects to address the matter on the merits, and finds that the Plaintiffs have met their burden of establishing that summary judgment is warranted on at least three counts of their Complaint. First, the Court determines that the Debtor is ineligible for a discharge under both §§ 727(a)(3) and 727(a)(6)(A). Alternatively, even if the Debtor were eligible for a discharge, the Plaintiffs' have established that their debt should be excepted from that discharge under § 523(a)(2)(A). Since the Plaintiffs have established their right to summary judgment on these grounds, there is no need for the Court to address the remaining four counts of the Amended Complaint.

### Count Seven

Count Seven alleges that the Debtor should be denied a discharge because he failed to comply with this Court's order directing him to produce documents and proceed in good faith in the Georgia Divorce Action (doc. # 13, ¶¶ 148-51). In support of this claim, the Memo cites to the Examiner's report observation that the Debtor was "less than candid with the Auditor and the CPA," thereby preventing the Auditor from providing a coherent analysis of the Debtor's financial situation (doc. # 41 at 21). As indicated supra, the Debtor's sole response to this allegation is that he "disputes the characterizations of the report by [the] Plaintiffs as the report speaks for itself" (doc. # 52, ¶ 95). The Plaintiffs reply that the Debtor has failed to dispute any material fact in support of this claim (doc. # 54 at 1-2).

Pursuant to § 727(a)(6)(A), a debtor who refuses to obey a court order will be denied a discharge. 11 U.S.C. § 727(a)(6)(A); In re Gardner, 384 B.R. 654, 669 (Bankr. S.D.N.Y. 2008). The burden of persuasion is on the objecting party but the burden of production shifts once the objecting party has shown a violation of a court order. Id. The denial of discharge under § 727(a)(6) requires a showing that the debtor willfully and intentionally refused to obey a court order. Id. at 669-70. A mere failure to obey the order, resulting from inadvertence, mistake, or inability to comply, is insufficient and the party seeking denial must demonstrate some degree of volition or willfulness on the part of the debtor. Id. at 670. Here, the Plaintiffs correctly note that, at a hearing held on August 24, 2010, the Court ordered the Debtor to produce documents in the Georgia Divorce Action and to proceed in good faith. Based on the Examiner's report that the Debtor "was less than candid" and "unable or unwilling to produce documents," the Court finds that the Plaintiffs have set forth sufficient facts to establish that the Debtor violated the Court's directive to proceed in good faith. These same Examiner findings also support a finding that the Debtor's behavior was willful. Importantly, the Debtor has failed to challenge these findings in any way. The Report does indeed speak for itself as the Debtor states, and it speaks to the fact that the Debtor intentionally disobeyed the Court's order. Accordingly, the Court finds that the Debtor must be denied a discharge pursuant to § 727(a)(6)(A).

### Count Five

Count Five of the Amended Complaint alleges that the Debtor concealed, and failed to keep or preserve, records from which his financial condition or business transactions can be ascertained, in violation of § 727(a)(3) (doc. # 13, ¶¶ 130-40). In support of summary judgment on this claim, the Memo cites primarily to the Examiner's report, which documents the Examiner's inability to conduct a thorough examination of the Debtor's finances, due to the Debtor's evasive behavior in connection with the Divorce Action and his unwillingness or inability to maintain appropriate business records (doc. # 41 at 17-18). Additionally, the Memo asserts that the Debtor concealed records of his financial condition, as evidenced by his failure to include on his schedules property that was awarded to him in the Divorce Decree (doc. # 41 at 18). Finally, the Plaintiffs allege that, by asserting his Fifth Amendment privilege at the § 341 meeting, the Debtor refused to produce records or confirm or deny the existence of any records essential to a determination of the Debtor's financial circumstances (doc. # 41 at 18).

In the Supplemental Objection, the Debtor generally responds to the relevant supporting facts, stating that he "disputes the characterizations of the report by Plaintiffs as the report speaks for itself" (doc. # 52, ¶¶ 95-100). The Debtor points to the Examiner's admission in the Report that he never met or spoke with the Debtor, nor ever reviewed any financial documents concerning the Debtor or Middlebury that were located at their offices (doc. # 52, ¶ 94). As to the allegation of concealment, the Debtor responds that the property awarded to his ex-wife in the Divorce Decree was not owned by him, but rather, was owned by Middlebury (doc. # 52, ¶ 110). The Debtor insists that all property awarded to him by the Divorce Decree was either listed on the schedules or not owned by him (doc. # 52 ¶¶ 111-112). Significantly, the Debtor does not dispute that he refused to disclose financial records by asserting his Fifth Amendment privilege at his § 341 meeting (see doc. # 52, ¶ 104).

The Plaintiffs' reply argues that the Debtor only attempted to dispute a small portion of the facts they asserted in support of their § 727 claims, and those attempts fell short as they did not include citations to the record or articulate specific factual objections, but instead were cursory and vague (doc. # 54 at 1-4).

Pursuant to § 727(a)(3), a debtor may be denied a discharge if he "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). To implement this record-keeping requirement, § 727(a)(3) provides a two-step approach. In re Cacioli, 463 F.3d 229, 235 (2d Cir. 2006). Initially, the burden lies with the creditor to

8

show the lack of appropriate records. See id. If the creditor shows the absence of records, the burden shifts to the debtor to satisfy the court that his failure to produce the records was justified. Id.

A debtor's blanket assertion of his Fifth Amendment privilege against self-incrimination, on the theory that disclosures might incriminate him in criminal proceedings, is not a sufficient justification for failing to disclose essential financial information in a bankruptcy case. In re Heraud, 410 B.R. 569, 580 (Bankr. E.D. Mich. 2009); see also In re Dresser, 146 F. 383, 385 (2d Cir. 1906) (stating that there "is no doubt that it is within the power of Congress to grant or to refuse a discharge to a bankrupt upon such conditions as it may deem proper. Such a privilege is not a natural right, or a right of property, but is a matter of favor, to be accepted upon such terms as Congress sees fit to impose."). Complete financial disclosure is a condition precedent to discharge. See Cacioli, 463 F.3d at 236 (citing In re Underhill, 82 F.2d 258, 260 (2d Cir. 1936)); In re Nemes, 323 B.R. 316, 324 (Bankr. E.D.N.Y. 2005)

The initial question which arises under § 727(a)(3) is whether the Debtor's alleged failure to disclose property of the estate on his bankruptcy schedules qualifies as the concealment of "recorded information." Given that the Court finds sufficient alternative facts support a denial of discharge under this provision, however, the Court need not answer this question, and does not rely upon the parties' arguments as to whether the Debtor's conduct constitutes a concealment of assets.

As set forth above, in this and the divorce litigation, the Debtor has been less than candid with opposing parties and the courts concerning his financial matters. Then, at his § 341 meeting, the Debtor continued his pattern of non-disclosure by asserting his Fifth Amendment privilege – in invoking this privilege, the Debtor was refusing to disclose the very financial information required to proceed in his bankruptcy case. This failure to respond is sufficient to demonstrate the Debtor failed to disclose the records required for relief in a bankruptcy case. Further, shielding himself from potential criminal liability, while certainly the Debtor's constitutional right, does not excuse a lack of disclosure under § 727(a)(3). In this case, the Plaintiffs have shown that the Debtor failed to provide complete financial disclosure, and the Debtor failed to show that failure was justified. Therefore, the Debtor is not entitled to a bankruptcy discharge. See Cacioli, 463 F.3d at 236.

In so holding, the Court notes the absurd result that would occur if the Debtor in this case were allowed a discharge, while a careless debtor who negligently failed to keep appropriate records could be denied a discharge. See, e.g., In re Nemes, 323 B.R. at 328-30 (holding that a debtor who negligently failed to keep adequate credit card statements was not entitled to a discharge). The bankruptcy discharge is a privilege that is reserved for the honest debtor. See In re Dresser, 146 F. at 385; In re Maynard, 269

9

B.R. at 539. The Court will not permit the Debtor to use his Fifth Amendment shield from criminal liability as a sword against his creditors in this bankruptcy case and still enjoy the benefit of a discharge.

### Count One

Count One of the Amended Complaint alleges that the Debtor fraudulently induced the Plaintiffs to invest funds with him through false, or at least misleading, representations (doc. # 13, ¶¶ 92-104). In support of the Motion's assertion that none of the material facts underlying this claim are disputed, the Plaintiffs cite to paragraphs 10 through 83 of their SUMF (doc. # 41 at 5-6). Specifically, the Plaintiffs allege that the Debtor induced them to purchase portions of his interests in certain loans based upon his representations that the loans were secured by various parcels of property, when in fact the Debtor and his entities had either no or very little interest in the properties (doc. # 41 at 6-9).

The Debtor disputes the majority of the Plaintiffs facts in support of this claim by (1) stating he "disputes the allegations in this paragraph," (2) citing a prior portion of his Supplemental Objection that refers to a disclaimer in the MPAs, and (3) asserting the MPAs also provide that a person other than Dixon was responsible for conducting the due diligence investigation for the Plaintiffs before they purchased any interest in a loan (see, e.g., doc. # 52 ¶¶ 13-19, 25-30, 32-34, 44-46). Further, the Debtor alleges that the true status of the collateral securing the loans was disclosed in the paperwork he sent to Plaintiffs (doc. # 52, ¶¶ 22, 37, 50). Finally, the Debtor argues that the Plaintiffs' assertion of causation is not supported by any evidence, or is supported only by Dixon's affidavit (doc. # 52 ¶¶ 19, 22).

The Plaintiffs reply that the Debtor's responses do not dispute that he made the false statements concerning the investments. Additionally, they note that the contractual disclaimer in the MPAs has no effect on their tort-based fraud claim. Moreover, citing to Federal Rule of Evidence 1002, they assert that this Court may not consider whether the documents the Debtor sent to them accurately described the status of the loans, as he has not produced them in this or the Georgia litigation (doc. # 52 at 4-5).

A plaintiff may establish the non-dischargeability of a debt under § 523(a)(2)(A) by proving, by a preponderance of the evidence, that the debtor knowingly and willingly made an implied misrepresentation or wrongfully failed to disclose material facts that created a contrived and misleading understanding of the transaction on the part of the plaintiff and which wrongfully induced the plaintiff to advance money, property, or credit to the debtor. In re Khafaga, 419 B.R. 539, 546 (Bankr. E.D.N.Y. 2009). A debtor may "knowingly" make a misleading statement by issuing a false statement with reckless disregard for its truth. See In re Suarez, 367 B.R. 332, 349 (Bankr. E.D.N.Y. 2007).

Because direct proof of a debtor's state of mind is generally not available, a debtor's intent may be inferred from the totality of the circumstances. Id.; see In re Bath, 442 B.R. 377, 389 (Bankr. E.D. Pa.

2010) (finding sufficient circumstantial evidence of debtor's fraud to grant plaintiff's motion for summary judgment on its false pretenses claim under § 523(a)(2)(A)). Numerous instances of misleading representations, taken together, can be strong circumstantial evidence of false pretenses under § 523(a)(2)(A). See In re Dobrayel, 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002).

Here, the Debtor has failed to sufficiently dispute any of the material facts underlying this claim. First, his cursory assertions that he disputes the Plaintiffs' allegations are categorically insufficient to preclude entry of summary judgment. See Kulak, 88 F.3d at 71. Second, the Plaintiffs correctly note that any representations in the MPAs concerning whose duty it was to conduct due diligence concerning the loans do not affect whether the Debtor's debts to the Plaintiffs can be excepted from discharge under § 523(a)(2)(A). While the MPA provisions, as well as the Debtor's alleged disclosure of the true status of the loans, would be relevant to any contractual claim, they cannot shield the Debtor from liability in this summary judgment action on a tort claim. His allegations fail to overcome the Plaintiffs' evidence that the Debtor made false representations concerning the secured status of the loans, upon which they relied to their detriment.

Indeed, the Debtor does not cite to any facts which show that he did not make the assertions alleged to be false. In support of his position, the Debtor refers only to the following portion of his deposition:

> Q: So did you tell Ms. Dixon or anybody else that there was no real estate securing these loans at the time the participation interests were bought?
>
> A: I'm sure we talked about it because this transaction hadn't had real estate included in it for better than seven years.

However, a claim that they "talked about" whether the loans were secured by real property would not cause a reasonable trier of fact to reach a conclusion as to whether the Debtor made truthful or false assertions concerning the collateral for the subject loans. It might cause a reasonable trier of fact to believe the Debtor orally disclosed the true status of the loans to Dixon at some time, but as it does not specifically deny the Plaintiffs' assertions that the Debtor made false representations – either then or at another time - the Court finds that this response is not adequate to dispute the Plaintiffs' recitation of facts underlying this claim.

Further, given the Debtor's course of conduct in this case, the Court finds the Debtor made the false statements with intent to deceive or, at the very least, with reckless disregard for the truth of the statements. Taken individually, a reasonable trier of fact might find any one of the Debtor's false representations to be the result of inadvertence or mistake. Taken collectively, however, the Court finds

11

that no reasonable trier of fact could determine that the Debtor's course of conduct showed anything other than a pattern of intentional deceit.  Therefore, the Court finds that the Plaintiffs have met their burden of proving that their debt should be excepted from discharge, pursuant to § 523(a)(2)(A).

## CONCLUSION

For the reasons set forth above, the Court declares the Debtor is not entitled to a discharge in this case under Counts Five and Seven of the Amended Complaint, and alternatively declares even if the Debtor were entitled to a discharge, the Debtor's debt to the Plaintiffs would be excepted from that discharge under Count One of the Amended Complaint.  On that basis, the Court grants the Plaintiffs' motion for summary judgment, and declines to address the Plaintiffs' remaining counts in the Amended Complaint.

This memorandum constitutes the Court's findings of fact and conclusions of law.

November 18, 2013  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge